## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOHN RICHARDSON                                      CIVIL ACTION

VERSUS
                                                     NO. 24-276-SDJ
UNITED WHOLESALE
MORTGAGE, LLC

## RULING AND ORDER

This matter comes before the Court on a Motion to Dismiss Pursuant to Rule 12(b)(6), or, Alternatively, Motion for More Definite Statement Pursuant to Rule 12(e) (R. Doc. 14) filed by Defendant United Wholesale Mortgage, LLC. Plaintiff John Richardson, who is proceeding *pro se* in this matter, filed an opposition to UWM's Motion to Dismiss (R. Doc. 15). UWM, in response, filed a Reply in support of its Motion to Dismiss (R. Doc. 16).[1] The Court has carefully considered the law, facts in the record, and arguments and submissions of the Parties. For the following reasons, UWM's Motion is **GRANTED,** and Plaintiff's claims against UWM are **DISMISSED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

At the outset, the Court notes that Plaintiff's Complaint provides little to no factual background, which has made it difficult for the Court to ascertain the facts at issue in this case. However, from the information provided, it appears to the Court that on or about April 13, 2013, Plaintiff entered into a mortgage loan agreement with UWM in the amount of $173,630.00 for a residence located in Baton Rouge, Louisiana.[2] Plaintiff's note subsequently was "sold, transferred,

---

[1] Plaintiff also filed a response to UWM's Reply. However, as it was done without leave of Court in contravention of Local Civil Rule 7(f), it has not been considered by the Court in the instant Ruling.
[2] R. Doc. 1 at 8 ¶ 6; R. Doc. 1-3 at 2, 12, 13.

assigned and securitized" into certain Freddie Mac Multiclass Certificates with an issue date of May 30, 2023.[3]

Plaintiff filed suit in this court on April 8, 2024, asserting the following claims against UWM: (1) breach of contract; (2) soliciting nonmailable matter; (3) failure to provide notice; (4) violation of the Truth in Lending Act; (5) violation of the Real Estate Settlement Procedures Act; and (6) peonage involuntary servitude.[4]   In response to Plaintiff's Complaint, on May 24, 2024, UWM filed the instant Motion to Dismiss Pursuant to Rule 12(b)(6), or Alternatively, Motion for More Definite Statement Pursuant to Rule 12(c).[5]   Plaintiff filed an Opposition in response to UWM's Motion to Dismiss on June 14, 2024, to which UWM filed a Reply on June 28, 2024.[6] Plaintiff then filed a response to UWM's Reply.[7]   However, because such response was filed without leave of Court, in contravention of Local Civil Rule 7(f), the Court has not considered it in reaching its decision herein.

## II.     LAW AND ANALYSIS

### A.     Applicable Law

#### 1.     Rule 12(b)(6) Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part thereof, for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Shiell v. Jones*, No. 19-848, 2020 WL 2331637, at *10 (E.D. La. May 11, 2020) (quoting *Ashcroft*

---

[3] R. Doc. 1-3 at 13.
[4] Doc. 1 at 12-14 ¶¶ 37-47.
[5] R. Doc. 14.
[6] R. Docs. 15, 16.
[7] R. Doc. 17.

*v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Shiell*, 2020 WL 2331637, at *10 (quoting *Iqbal*, 556 U.S. at 679).

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "Dismissal is appropriate when the complaint on its face shows a bar to relief." *Shiell*, 2020 WL 2331637, at *10 (quoting *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

### 2.    Pro Se Litigant

Plaintiff is proceeding in this litigation *pro se*. *Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). A court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, "a *pro se* litigant is not exempt ... from compliance with relevant rules of procedural and

substantive law." *NCO Fin. Sys., Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)) (internal quotations omitted).  As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson,* 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd*., No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)).  A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.*  And "[a] *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Sys.*, 2008 WL 2277843, at *3 (citing *Birl*, 660 F.2d at 593).

### B.    Discussion

The Court finds that Plaintiff has either not pleaded sufficient factual material to support his claims to relief or has failed to provide a legal basis for said claims, and, therefore, Plaintiff's claims cannot survive UWM's Motion to Dismiss.

### 1.    General Allegations

At the outset, the Court notes that it appears Plaintiff's Complaint, as best as it can be interpreted, is based on legal theories—namely, challenges to "securitization" of mortgage loans and the "splitting of notes and mortgages"—that have been resoundingly rejected by federal courts across the country.   In deciding cases alleging that a mortgage was improperly securitized and/or pooled, courts have found that neither theory has merit. *See, e.g., Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) (discussing and rejecting the theory that a mortgage was allegedly "split" from the note through securitization, rendering the note

unenforceable); *Marban v. PNC Mortg.*, No. 12-3952, 2013 WL 3356285, at *10 (N.D. Tex. Jul. 3, 2013) (finding meritless the theory that any securitization of the loan rendered the note and accompanying deed of trust unenforceable and discharged a borrower's obligations under them); *Beebe v. Fed. Nat'l Mortg. Ass'n*, No. 13–311, 2013 WL 3109787, at *2 (D. Nev. Jun. 18, 2013) ("The securitization argument has been repeatedly rejected ... because it does not alter or change the legal beneficiary's standing to enforce the deed of trust."); *Henkels v. J.P. Morgan Chase*, No. 11–0299, 2011 WL 2357874, at *7 (D. Ariz. Jun. 14, 2011) (rejecting claim "that securitization has had any impact on [p]laintiff's obligations under the loan" and noting that other courts have rejected similar claims).

Courts also have dismissed claims similar to those by Plaintiff, such as violations of TILA and RESPA and breach of contract, based on allegations similar to those made by Plaintiff. *See Taylor v. Wells Fargo Bank, N.A.,* 85 F. Supp. 3d 63 (D.D.C. 2015); *Lakiesha v. Bank of New York Mellon*, No. 15-901, 2015 WL 5934439 (N.D. Tex. Oct. 9, 2015); *Diamond v. Wells Fargo Bank, N.A.*, No. 14-975, 2015 WL 9691031 (D. Ariz. Jun. 30, 2015); *Kennedy v. World Sav. Bank, FSB*, No. 14-5516, 2015 WL 1814634 (N.D. Cal. Apr. 21, 2015); *Dagres v. Countrywide Bank, N.A.,* No. 14-1339, 2014 WL 3417848 (C.D. Cal. Jul. 10, 2014).

### 2.    Count One: Breach of Contract

Count One of Plaintiff's Complaint is titled breach of contract in violation of 41 U.S. § 6503.[8]  As alleged by Plaintiff:[9]

> 37.) Defendant, "UWM" agents and employees failed to contain a Notice provision pursuant to 16 C.F.R. § 433.2, any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type for personal, family, or household use, violating the Holder

---

[8] R. Doc. 1 at 12.
[9] *Id.* at 12-13 ¶¶ 37-38; 40.

in Due Course Rule. Give rise that all money paid is returned to Plaintiff, and balance eliminated.

38.) Defendant "UWM" agents and employees failed to advance Plaintiff cash advance where there is no evidence that Plaintiff received a loan which is a purchase money loan that is cash advance to Plaintiff account or any form.

**** 

40.) Defendant "UWM" agents and employees failed to credit Plaintiff's account as "Paid as Agreed and/or Paid in Full" after the receipt of payments being tendered in good faith for full satisfaction of all claims owed pursuant to accord and satisfaction. [UCC 3-311] *Burke Co. v. Hilton Development Co., 802 F.Supp. 434.*

Thus, while Plaintiff titles this section "breach of contract" in violation of 41 U.S. § 6503, Plaintiff's actual allegations also appear to raise other claims.

The Court turns first to Plaintiff's 41 U.S. § 6503 claim. "Section 6503 applies in case of breach or violation of a representation or stipulation included in a contract under section 6502, *i.e.*, contracts made by an agency of the United States for the manufacture or furnishing of materials, supplies, articles, or equipment, in an amount exceeding $10,000." *Ezparza v. Galveston Coll.*, No. 21-176, 2021 WL 5830043, at *2 (S.D. Tex. Dec. 1, 2021) (citing 41 U.S.C. §§ 6502-6503) (internal quotations and modification omitted). Here, Plaintiff has not identified any public contract made by the United States with Plaintiff that could be the basis of a violation of 41 U.S. § 6503, nor does Plaintiff allege how UWM, which is not an agency of the United States, could have violated this statute. As such, Plaintiff does not state a claim for breach of contract in violation of 41 U.S. § 6503.

Plaintiff also argues that UWM violated 16 C.F.R. § 433.2 by not providing proper notice in a consumer contract. According to 16 C.F.R. § 433.2, "[i]n connection with any sale or lease of goods or services to consumers, in or affecting commerce … it is an unfair or deceptive act or practice … for a seller, directly or indirectly, to take or receive a consumer credit contract" or "[a]ccept, as full or partial payment for such sale or lease, the proceeds of any purchase money

loan" without containing the specific notice provisions set forth in the statute. 16 C.F.R. §
433.2(a)-(b). Courts have found that this requirement does not extend to mortgage loan
agreements. *See Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F.Supp.2d 16, 55 (D.D.C.
2006). Similarly, the Federal Trade Commission itself has clarified that this provision, which is
part of the Holder-In-Due-Course Rule, stating that "only purchases of goods and services are
covered by the Rule" and that "[s]ales of interests in real property are unaffected."[10] Because the
only contract potentially at issue here is a mortgage loan agreement for real property, Plaintiff has
failed to state a claim for violation of 16 C.F.R. § 433.2.

In addition, Plaintiff also appears to claim that his mortgage debt was paid in full when he
submitted two money orders—one for $1,000.00 and one for $395.73—on which Plaintiff wrote:
"Payment in full satisfaction, made on the condition that the obligation be cancelled on Account
#0182655282 Redeemed in lawful money on demand of the Treasury department of the US in the
city of Washington DC, of any federal reserve bank."[11] Per Plaintiff, despite this language, UWM
has failed to credit Plaintiff's account accordingly, *i.e.*, eliminate the remainder of his debt.
Plaintiff also wrote on the back of the money orders: "By acknowledgement and endorsement of
this draft the payee acknowledges full and final settlement of all sums owed to the payee by the
payor on acct # 0182655282."[12] Plaintiff' refers to U.C.C. § 3-311, which governs "Accord and
Satisfaction by Use of Instrument" and provides: "If a person against whom a claim is asserted
proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction
of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and

---

[10] Federal Trade Commission Bureau of Consumer Protection, *Staff Guidelines on Trade Regulation Rule
Concerning Preservation of Consumers' Claims and Defenses.*, May 4, 1976, p. 9
[https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-opinion-letter-affirms-consumers-rights-underholder-rule/hidcrule.pdf].
[11] R. Doc. 1-1 at 1.
[12] *Id.* at 2.

(iii) the claimant obtained payment of the instrument," a debt is discharged if other noted requirements are met.[13]  However, here, there is no indication that the amount of the claim was unliquidated or subject to a bona fide dispute.  The mortgage loan agreement was for a specific amount, which Plaintiff failed to pay.  The statement from UWM provided by Plaintiff, dated March 15, 2024, and which is the only evidence of the remaining amount of the mortgage loan, specifically shows an outstanding principal balance of $172,314.29 and states that, in addition to the current payment due, Plaintiff owes $2,940.99 as an "[o]verdue amount."[14]  Plaintiff has provided no support for his apparent position that paying a lesser amount than that owed and stating it is in full accord and satisfaction for the debt at issue satisfies the requirements of U.C.C. § 3-311 and La. R.S. 10:3-311.  If that were the case, no mortgage loan would ever be made.

Because the Court finds that Plaintiff has failed to state a claim for breach of contract in violation of 41 U.S. § 6503, or for failure to provide proper notice in accordance with 16 C.F.R. § 433.2, or for accord and satisfaction of the debt under U.C.C. § 3-311, this claim must be dismissed.

### 3.    Count Two: Soliciting Nonmailable Matter

Plaintiff's second count is for "soliciting nonmailable matter" in violation of 39 U.S.C. § 3001(d)(1) and (2).[15]  Plaintiff alleges that UWM "mailed a Mortgage statement and it should have been only just that.  But defendant mail stated pay to the Order or make check payable that's when Defendant misconstruing."[16]  Plaintiff continues, alleging that on or about March 15, 2024, UWM mailed Plaintiff a statement which "shows a Credit balance" but also "doesn't reflect positive or

---

[13] La. R.S. 10:3-311 codifies UCC 3-311.
[14] R. Doc. 1-4 at 1.
[15] R. Doc. 1 at 13.
[16] *Id.* ¶ 41.

negative balance on this Closed end Credit" and that "[t]he ledger is incorrect."[17]  Per Plaintiff,

"when defendant stated pay to the Order or make check payable that's when Defendant

misconstruing under 39 U.S. Code 3001."[18]  In support, Plaintiff attaches to his Complaint the

mailing in question.[19]

 39 U.S.C. § 3001(d) provides:

 (d) Matter otherwise legally acceptable in the mails which—

  (1) is in the form of, and reasonably could be interpreted or construed as, a
  bill, invoice, or statement of account due; but

  (2) constitutes, in fact, a solicitation for the order by the addressee of goods
  or services, or both;

 is nonmailable matter, shall not be carried or delivered by mail, and shall be
 disposed of as the Postal Service directs, unless such matter bears on its face, in
 conspicuous and legible type in contrast by typography, layout, or color with other
 printing on its face, in accordance with regulations which the Postal Service shall
 prescribe—

  (A) the following notice: "This is a solicitation for the order of goods or
  services, or both, and not a bill, invoice, or statement of account due. You
  are under no obligation to make any payments on account of this offer
  unless you accept this offer."; or

  (B) in lieu thereof, a notice to the same effect in words which the Postal
  Service may prescribe.

 A review of the mailing in question shows that it is a loan statement sent by UWM to

Plaintiff for a specific amount owed to UWM by Plaintiff.  As such, the provisions of 39 U.S.C. §

3001(d) do not apply.  This claim, therefore, is without merit, and is dismissed.

---

[17] *Id.* at 9 ¶ 12.
[18] *Id.* ¶ 13.
[19] R. Doc. 1-4.

4.      **Counts Three and Four: Failure to Provide Notice and Violation of Truth in Lending Act**

Count Three of Plaintiff's Complaint is for "failure to provide notice."  As alleged by Plaintiff:[20]

> [UWM] failed to provide the federally mandated disclosure forms or inform Plaintiff explicitly about rights to rescind this transaction under 15 U.S. Code § 1635 and <u>12 CFR § 1026.23</u>.  Plaintiff did not receive or wasn't disclosed the Notice of Right to cancel, nor that note have been however pooled, sold, transferred with other loans and mortgages and this pool of loans and mortgages in this security offering with Freddie Mac Multiclass Certificates, Series 5314.

For his fourth count, Plaintiff argues that UWM violated TILA, 15 U.S.C. § 1605(a) because its "contract contained [i]naccurate … disclosures, misrepresenting the finance charge where creditors are suppose [sic] to explain conspicuously to Plaintiff the finance charge and not withhold information."[21]  In addition, Plaintiff alleges that UWM violated 12 CFR § 1026.2 "by misrepresenting disclosing Statement violating [TILA] with a Statement that doesn't tell Plaintiff, if it's a credit or debit is false & misleading."[22]  Plaintiff also alleges "[t]his is considered unfair or deceptive acts or practices under Louisiana section 51:1405."[23]  Because 15 U.S.C. § 1635 is a provision of TILA, and because 12 C.F.R. §1026.23 is part of the implementing regulation of TILA, the Court will address these two counts together.

15 U.S.C. § 1635 governs rescission of certain transactions and provides, in part, that "the creditor must disclose the consumer's right to rescind the transaction up to three business days after either the consummation of the transaction, the delivery of a notice of the right to rescind, or delivery of all material disclosures, whichever occurs last." *Austin v. Bank of Am., N.A.*, No. 16-8726, 2016 WL 6777614, at *4 (E.D. La. Nov. 16, 2016) (citing 15 U.S.C. § 1535(a)).  Similarly,

---

[20] R. Doc. 1 at 13-14 ¶ 42.
[21] R. Doc. 1 at 14 ¶ 43.
[22] *Id.* ¶ 44.
[23] *Id.*

12 C.F.R. §1026.23 provides, in part, that [i]n a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section."   12 C.F.R. §1026.23(a)(1). Paragraph (f) then specifically states that "[t]he right to rescind does not apply to … [a] residential mortgage transaction." 12 C.F.R. §1026.23(f)(1).  Thus, the right of rescission claimed by Plaintiff does not apply to residential mortgage loans.  *See Roberts v. Am. Bank & Trust Co., Inc.*, 835 F.Supp.2d 183, 196 (E.D. La. 2011) (noting plaintiff conceded that "'residential mortgage transactions' are excluded from the right of rescission that TILA created").

Turning to Plaintiff's fourth count, 15 U.S.C. § 1605(a) defines the term "finance charge" and lists certain types of charges which can be considered "finance charges."  Here,  however, Plaintiff fails to provide sufficient factual allegations as to how any disclosures made by UWM regarding finance charges were insufficient or otherwise violated this provision.[24]  Similarly, 12 C.F.R. § 1026.2 simply defines terms used in the TILA statutes and provides rules of construction for the statutes.  Plaintiff, again, makes only conclusory allegations against UWM.  *See BillJCo, LLC v. Apple Inc.*, 583 F.Supp.3d 769, 776 (W.D. Tex. 2022) (while construing a complaint in the light most favorable to plaintiff, a court "does not accept as true conclusory allegations,

---

[24] The Court notes that an attachment to Plaintiff's Complaint titled "Bona Fide Dispute Notice," presumably sent to UWM, though that is unclear, states, in part: "Violation of the Truth in Lending Act (TILA), specifically regarding the misrepresented 'finance charge.'  The documented 'finance charge' of $230,784.05 contradicts 15 U.S. Code. § 1605, which defines 'finance charge' as the sum of all charges-interest, service charges, transaction fees, etc. In the contract, the actual sum of all charges if $406,151.17.  Given 15 U.S. Code. § 1640, this discrepancy makes you accountable for double this sum." R. Doc. 1-2 at 3.  However, this reference also is insufficient to state a claim against UWM, as the Court does not know what "finance charge" is being referenced, and Plaintiff does not allege how any such "finance charge" actually violates 15 U.S.C. § 1640.  "While much liberality is allowed in construing *pro se* complaints, a *pro se* litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim."  *Samtani v. City of Laredo*, 274 F.Supp.3d 695, 698 (S.D. Tex. 2017).

unwarranted factual inferences, or legal conclusions."). Further, Plaintiff's argument that the "Statement" is false and misleading because it does not state whether a credit or debit is being referenced is without support. While Plaintiff does not identify the "Statement" at issue, he does provide a "Loan Statement" which clearly sets out the payment due date, the current payment amount due, the past due amount, the unpaid late charges, and the "TOTAL AMOUNT DUE," written in capital letters.[25] To the extent this, or something similar, is the "Statement" at issue, Plaintiff has failed to viably argue a violation of TILA on these grounds.

Plaintiff further alleges this allegedly misleading "Statement" is a violation of La. R.S. 51:1405, which declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To survive a Rule 12(b)(6) motion ... "a plaintiff must allege more than 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Hamad v. Center for Jewish Cmty. Studies*, 265 F. App'x. 414, 416, (5th Cir. 2008) (quoting *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993)). Here, Plaintiff has provided no factual allegations in support of this claim, and this conclusory allegation alone is not sufficient to avert dismissal.

As Plaintiff has failed to substantiate any of his myriad arguments regarding a purported violation of TILA, the Court finds this claim should be dismissed, as it is without merit.

### 5.    Count Five: Real Estate Settlement Procedures Act

Count Five of Plaintiff's Complaint is for violation of RESPA, 12 U.S.C. § 2607.[26] As alleged by Plaintiff, "Defendant 'UWM' agents and employees violations of kickbacks applying

---

[25] R. Doc. 1-4 at 1.
[26] R. Doc. 1 at 14.

excess unearned fees and cost not only with pooling to Freddie Mac Multiclass Certificates, Series

5314."[27]  As further alleged by Plaintiff:

> 20.) The Mortgage and the Note have taken two distinctly different paths.  Plaintiff Mortgage was never transferred.  But however the $173,630.00 note have been however pooled, sold, transferred with other loans and mortgages and this pool of loans and mortgages in this security offering of $519,722,388. ….  Which is part of [RESPA] violation to apply excess fees and cost, which to include RESPA allegation violation has been brought in a Class Action Law sue toward 'UWM' on April 3, 2024.

As set forth in 12 U.S.C. § 2607(a), "[n]o person shall give and no person shall accept any

fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that

business incident to or a part of a real estate settlement service involving a federally related

mortgage loan shall be referred to any person."  However, Plaintiff's allegations with regard to his

RESPA claim, while parroting some of the wording of the statute, are not clear.  Plaintiff has not

identified any allegedly improper fees and costs UWM either paid or received.  Nor has he alleged

why any such fees, should they exist, violate RESPA.

As stated above, Plaintiff must allege more than conclusory allegations or legal conclusions

presented as factual conclusions to survive a Motion to Dismiss.  *See Hamad*, 265 F. App'x. at

416.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Factual allegations must be enough to raise

a right of relief above the speculative level."  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632

F.3d 148, 153 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. 544, 555).  The factual allegations in

Plaintiff's RESPA claim are unacceptably sparse and vague.  As such, Plaintiff's claim for

violation of RESPA is dismissed.  *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir.

2002) ("[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel,

---

[27] *Id.* ¶ 45.

conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotations omitted).

### 6.    Count Six: Peonage Involuntary Servitude

Plaintiff's sixth and final claim is for "peonage involuntary servitude."[28]  Plaintiff alleges that UWM "coerced Plaintiff with the scheme of credit to induce Plaintiff to debt bondage."[29] Plaintiff also argues that UWM has "a pattern to make consumers such as Plaintiff pay in the form of Federal Reserve Notes obtained from physical labor which creates a taxable event with the Internal Reserve Services."[30]  Plaintiff further alleges:[31]

28.) Plaintiff is not a US Borrower authorized to make advances for Credit or Federal Reserve Notes with the Federal Reserve.

29.) Plaintiff is not authorized as a commercial bank, mutual savings bank, loan association, credit union, or other charter type.

30.) Defendant, "UWM" agents and employees seek to obtain payment for a credit transaction from Plaintiff.

31.) Defendant, "UWM" agents and employees believe Plaintiff created a debt obligation that has to be settled in the form of federal reserve notes from Plaintiff.

32.) Federal Reserve notes can only be acquired from the Federal Reserve Bank, or the employment of one's physical and mental labor in commerce for salary or hourly compensation which could create a "taxable event" for Plaintiff with Internal Revenue Services.

33.) Defendant, "UWM" agents and employees are seeking to coerce Plaintiff into peonage to settle the debt obligation that was created from a consumer credit transaction.

34.) Defendant, "UWM" agents and employees are reporting inaccurate, Non public information to Consumer credit reporting agencies to financially harm Plaintiff.

35.) Defendant, "UWM" agents and employees are seeking to benefit financially by receiving something of value from Plaintiff in a venture which has engaged in

---

[28] R. Doc. 1 at 14.
[29] *Id.* ¶ 46.
[30] *Id.* ¶ 47.
[31] *Id.* at 12 ¶¶ 28-36.

the providing or obtaining of labor or services by means of false and deceptive practices while engaging in commerce in the territory of Louisiana.

36.) Defendant, "UWM" agents and employees have engaged in unfair, deceptive, or abusive acts and practices against Plaintiff using credit as a tool for coercion to place Plaintiff into debt bondage.

Once again, Plaintiff's claim is unclear.  It appears to the Court that Plaintiff is arguing that because the only way he can earn money to repay the mortgage loan he willingly entered into is to work for wages, he is being indentured in some fashion.  First, Plaintiff has failed to identify what federal law or regulation UWM purportedly has violated.  Second, Plaintiff has failed to allege sufficient factual allegations to support this claim.  And third, the Court finds this argument, if correctly interpreted, wholly without merit.  Plaintiff has made no allegations that he was coerced or otherwise forced to enter into the original mortgage loan contract.  As such, this claim also is dismissed.

### 7.    Alternative Request for More Definite Statement

UWM, in its Motion to Dismiss, alternatively moves for a more definite statement by Plaintiff pursuant to Rule 12(e).  However, because the Court is herein dismissing Plaintiff's claims under Rule 12(b)(6), it need not reach UWM's request for alternate relief.

### C.    Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure governs amendments to pleadings. According to Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "It is well settled that before dismissing a complaint, a pro se plaintiff should be given an opportunity to amend his complaint to remedy any deficiencies."  *Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.*, 79 F.4th 464, 468 (5th Cir. 2023) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).  "In other words, leave to amend should be liberally granted,

when the plaintiff might be able to state a claim based on the underlying facts and circumstances." *Id.* (citing *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)).  "Nevertheless, a district court is not obligated to grant a futile motion to amend, for instance, when 'the plaintiff has already pleaded his best case.'" *Id.* (quoting *Brewster*, 587 F.3d at 768).

      Here, the Court recognizes that cases similar to the instant matter routinely have been dismissed by courts across the country.  However, in comporting with the Fifth Circuit's clear directive that a *pro se* Plaintiff should be given an opportunity to amend his complaint to remedy any deficiencies, the Court finds that Plaintiff should be given an opportunity to amend his Complaint.

## III.    CONCLUSION

      For the reasons set forth above,

      **IT IS ORDERED** that the Motion to Dismiss Pursuant to Rule 12(b)(6), or, Alternatively, Motion for More Definite Statement Pursuant to Rule 12(e) (R. Doc. 14) filed by Defendant, United Wholesale Mortgage, LLC, is **GRANTED** and that all claims of Plaintiff against Defendant are **dismissed**.

      **IT IS FURTHER ORDERED** that Plaintiff, if he wishes, may file an Amended Complaint with the Court **on or before January 31, 2025**.  Should Plaintiff fail to file an Amended Complaint by this deadline, his claims against Defendant will be dismissed with prejudice.

      Signed in Baton Rouge, Louisiana, on December 31, 2024.


_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**